FILED
07/03/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 5, 2018 Session

**MARY ALICE AKINS v. GRIFF ELLIOTT AKINS**

**Appeal from the Chancery Court for Wilson County**
**No. 2014-CV-223    Charles K. Smith, Chancellor**

_____

**No. M2017-00594-COA-R3-CV**
_____

In this appeal, the father sought to revise the permanent parenting plan in order to permit him greater participation in the life of his daughter. The trial court denied the requested revision, finding that the father had failed to prove by a preponderance of the evidence that there had been a material change in circumstances that affected the child's best interest. The father appeals. We affirm the trial court's ruling regarding the permanent parenting plan, but we vacate the award of attorney's fees and costs.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in part and Vacated in part; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

James L. Collier, Nashville, Tennessee, for the appellant, Griff Elliott Akins.

John L. Meadows, Lebanon, Tennessee, for the appellee, Mary Alice Akins.

**OPINION**

**I.  BACKGROUND**

The Defendant/Petitioner, Griff Elliott Akins ("Father"), and the Plaintiff/Respondent, Mary Alice (Eckel) Akins ("Mother") were divorced in April 2013. They have one child ("the Child") who was born in 2008, and was, at the time of trial, eight years of age. A permanent parenting plan ("the parenting plan") was incorporated with the final divorce decree. It listed Mother as the Primary Residential Parent with 265 days of residential parenting time. Father was awarded supervised parenting time of 100 days, including every other weekend and alternating weeks during the summers. At the time of the divorce, Father suffered from various illnesses, including a bipolar condition

and migraine headaches. His health and medication needs affected his parenting ability, which is the reason the parenting plan required Father to have supervised visitation. His time with the Child was to be supervised by Father's mother. Mother was given sole decision making authority regarding the Child's education.

In the initial request for modification, Father alleged that his health had significantly improved. He noted that his bipolar condition and migraines were under control and that he had discontinued the use of narcotic drugs.[1] Father also asserted increased flexibility in his work schedule, claiming that he "could kind of get off work" when he wanted to attend to any matters for the Child. Additionally, he contended that Mother and the Child had moved closer to his residence.

On May 6, 2014, the parties entered into an agreement modifying the parenting plan in order to gradually remove Father's supervised visitation.[2] Upon each visit, so many days of supervised visitation were to be removed until none remained. The agreed order provided that "Father's parenting time shall be supervised by his current fiancé, Valerie Wemli, for one hundred twenty days to gradual unsupervised parenting time at the end of one hundred twenty day time period." The order further stated "[t]hat Father's parenting time shall be fully supervised for at least sixty days and then shall gradually become unsupervised with short to longer increments of unsupervised parenting time. That other approved supervisors shall supervise Father's overnight parenting time until Father and his fiancé marry . . . ."[3] Additionally, Father's weekend parenting time was extended from Sunday to Monday, with Father taking the Child to school on Mondays (instead of returning her to Mother on Sundays).

On March 4, 2015, Father filed a Petition to Terminate/Suspend Alimony and a Petition for Contempt. He also filed another Petition to Modify, seeking to increase his time with his daughter because his medical condition had resolved, stepmother and the Child had developed a meaningful relationship, and his working conditions gave him more flexibility in his work schedule and required him to work less hours. By the time of trial, however, Father dropped all of his claims except for his request for co-equal visitation.

A hearing was held on January 12 and 13, 2017. During Father's testimony, it became apparent that little had truly changed since the June 2014 agreement. The trial court found that Father did not prove by a preponderance of the evidence that there had been a material change of circumstances affecting the Child's best interest since June 5,

---

[1] Evidence presented at trial revealed that Father had received surgery that helped alleviate his pain.

[2] Agreed order was entered on June 5, 2014.

[3] The couple married on May 13, 2014.

2014. The court entered its final order granting Mother's oral motion to dismiss on February 27, 2017. This timely appeal followed.

## II. ISSUES

Father raises the following issues on appeal:

> 1. Whether the trial court erred in finding that Father had not met his burden of proof in regard to whether there had been a substantial and material change in circumstances such that Father would receive additional parenting time.
>
> 2. Whether the trial court erred in granting Mother her attorney's fees.

## III. STANDARD OF REVIEW

The factual findings of the trial court are given a presumption of correctness, and we will not overturn those findings unless the preponderance of evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, S.W.3d 721, 727 (Tenn. 2001). We review questions of law "under a pure de novo standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon Cnty Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

A trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions. *See In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Thus, appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them unless the evidence preponderates against the trial court's findings. *See* Tenn. R. App. P. 13(d).

A trial court's decision regarding the details of a residential parenting schedule should not be reversed absent an abuse of discretion. *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88.

## IV. DISCUSSION

Permanent parenting plans are incorporated into final divorce decrees involving minor children, and parties are required to adhere to such plans until modified by law. *See* Tenn. Code Ann. §36-6-404; *Armbrister v. Armbrister,* 414 S.W.3d 685, 697 (Tenn. 2013). "A custody decision, once final, is res judicata upon the facts in existence or reasonably foreseeable when the decision was made." *Scofield v. Scofield*, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *3 (Tenn. Ct. App. Feb. 28, 2007) (citing *Young v. Smith*, 246 S.W.2d 93, 95 (Tenn. 1952)). However, the law recognizes that circumstances change; therefore, the court is "empowered to alter custody arrangements when intervening circumstances require modifications." *Scofield,* 2007 WL 624351, at *2 (citing Tenn. Code Ann. §36-6-101(a)(1)).

A change in circumstances with regard to a residential parenting schedule is "a distinct concept" from a change in circumstance with regard to custody. *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007); *see also* Tenn. Code Ann. §§ 36-6-101(a)(2)(B), -101(a)(2)(C). If a parent requests a change of the primary residential parent, then the parent must "prove by a preponderance of the evidence a material change in circumstance." *Massey-Holt*, 255 S.W.3d at 607. The threshold for establishing a material change in circumstance where the issue before the court is a modification of the residential parenting schedule is much lower. *See*, e.g., *Boyer v. Heimermann*, 238 S.W.3d 249, 259 (Tenn. Ct. App. 2007); *see also* Tenn. Code Ann. §§ 36-6-101(a)(2)(B), -101(a)(2)(C). The petitioner still must "prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest" and that the change occurred after the entry of the order sought to be modified. *Caldwell v. Hill*, 250 S.W.3d 865, 870 (Tenn. Ct. App. 2007). However, unlike the standard for a change of primary residential parent, whether the change was reasonably anticipated when the prior residential parenting schedule order was entered is irrelevant. *Armbrister*, 414 S.W.3d at 703. "[A] material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(2)(C). Modification of a residential parenting plan is a two-part process: the court must first determine whether there has been a material change in circumstances, and then second, the court applies the "best interest" factors set forth in Tennessee Code Annotated section 36-6-106. *Armbrister*, 414 S.W.3d 697-98). The two analyses will likely substantially overlap. *Id.* at 698. As a threshold issue, the trial court must determine whether there has been a material change in circumstances that affects the child's best interest *since* the implementation of the plan. *In re M.J.H*, 196 S.W.3d 731, 744 (Tenn. Ct. App. 2005).

## Material Change in Circumstances

Considering Father's alleged changes in circumstances under the factors set forth in Tennessee Code Annotated section 36-6-101(a)(2)(C), we find that the evidence supports the findings of the trial court as stated below:

> **1. Changes in need of the child over time:** The Court finds there is no evidence put on whatsoever that there was any change in the needs of the child.
>
> **2. Changes relating to the age of a child:** The Court finds there was no proof one-and-a-half years of age more since the last Order caused any [material] changes. . . .
>
> **3. Significant changes in the parents' living condition that significantly affected the parenting:** This right here is where the rubber meets the road. The Court finds there was significant change that affected it, but it did not affect it in a manner that the case law requires for there to be a change of circumstance. The Court further finds that Father testified the real problem and the primary reason he filed this Petition was the Mother was getting remarried and it hurt Father that the Step-Father would be spending more time with the minor child than with Father. That is the real basis for this lawsuit. Father basically admitted this on the stand during his testimony. So that is the real significant change, Mother's remarrying and Step-Father spending more time with [t]he child. But that is not a material change that would constitute circumstances affecting the child's best interest. . . .[4] The Court finds that the other change is eating and sleeping habits of the Father have changed. That Father carried that proof that that is a change, but the Court fails to find that this

---

[4] At trial, Father testified about stepfather: "He's a good guy. He seems like he loves Alexia. But the bottom line is, he's the stepfather. He's not the father. So it doesn't make sense to me – I need to be the main fatherly figure in my daughter's life. It doesn't make sense to me why I get 4 days a month basically, and the stepfather would get the other 27. I'm not saying anything bad about him at all . . . ." The trial court observed: "All the evidence was that he was a good stepfather, that there was, again, no problem with him. So, if [s]he was spending more time with the stepfather and the stepfather was abusing h[er] somehow mentally, physically, sexually, that would be a difference, or if the stepfather was abusing drugs, but there's been no evidence of that. And all the evidence has been and testified by the father that the stepfather was okay, he was okay."

change affects the child's best interest and he failed to prove it was a material change. It was just a change. That Father proved that he remarried and that his new wife is living in his home now and she was there and she and the child developed a good relationship. The Court finds that Father failed to prove by a preponderance of the evidence that this is a material change of circumstances affecting the child's best interest. Father has failed to prove that his eating habits, the relationship with the Step-Mother, and his sleeping habits have affected the child's well being in a meaningful way. Father has not shown this in any form and fashion. As to significant changes in parent's working conditions, the flexibility is not a change. It existed as of June 5, 2014. But the fewer hours going from 70 to 80 hours to 40 hours a week is a change. Merely proving that Father is working less hours, however, does not show that this affects the child's well being in a meaningful way.[5] Further, Father chose to not have his Wife testify about her relationship with the minor child.

**4. Failure to adhere to the Parenting Plan:** The Court finds that both parties have been adhering to the Parenting Plan [of June 5, 2014].[6]

---

[5] The court observed: "I'm still of the opinion, even under the guidelines from what I recall that was testified to, he testified that he was working 40 hours as opposed to 80 hours. I do not recall, and this statute, 36-6-101(a)(2)(c) says, significant change in parent's working condition that significantly affects parenting. I do not feel like he put on any proof showing that it significantly affected parenting. You could work less hours and spend the total time watching TV or playing cards or playing video games. You still have the burden of proving that because of this, at night when me and her work on her school work, we play games, we play this game, that game, do that, we have a bible study, we do something. I might have just forgot it when he testified to it, but I don't remember him testifying how it affected his parenting skills, the fact he's working less hours. I think you-all want me to just understand that obviously a person who is working 80 hours is less available to be a good parent than one working 40 hours, could be, could not be. The 80-hour-week father might be a great father, makes time for the child. An 80-hour-week father might be a horrible parent. A 40-hour parent may be horrible, may be great. That's my finding and justification for it. I do not find that there was proof put on to that effect."

[6] Father argued that the school was leaving him out of educational decisions and events, but testified that it was not Mother's fault and that she was a good mother and had been adhering to the parenting plan. The court found that Father did not help with educational expenses of the Child, so Mother should be allowed to make educational decisions on behalf of the Child.

**5. Other circumstances making [a] change in the parenting time in the best interest of the child:** The Court finds that Father put on no proof of any other circumstances making a change of parenting time in the best interest of the child.

Despite Father now arguing several material changes in circumstances, such as the resolution of his medical conditions and the flexibility of his work schedule, it appears that these changes were present or occurring at the time of the original petition to modify and were considered during the prior agreement between the parties. The evidence presented does not preponderate against the trial court's determination that the changes asserted by Father do not amount to a material change in circumstances for purposes of modifying the parenting plan.

## Best Interest

If the court had found that material changes in circumstances had occurred, the second determination the court would have made was whether a modification of the existing parenting plan would be in the Child's best interest using the factors set forth in Tennessee Code Annotated section 36-6-106(a). *Armbrister*, 414 S.W.3d at 705. *See* Tenn. Code Ann. §36-6-101(a)(2)(C). "In any proceeding between parents under this chapter, the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities." Tenn. Code Ann. 36-6-401(a). The statute emphasizes the need for stability and consistency in the child's life. *Id.* "[T]he best interests of the child are served by a parenting arrangement that best maintains a child's emotional growth, health and stability, and physical care." *Id.*

Because the trial court concluded that Father failed to prove a material change of circumstances in this case, it heard no "best interests" testimony. The record reveals that the Child is doing well under the current parenting plan. Father admitted that the Child is not nervous, does not suffer from anxiety, has no depression or aggression, and gets along well with other children. Father acknowledged that the Child was a "very happy, healthy little girl." He testified:

> THE WITNESS: Your Honor, if I could just say this. I'm not in any way, shape, or form trying to get any more custody of my child because of a bad mother. I'm not trying to say she's an unhealthy, unstable child and that something needs to be changed that way. She's a good mom. I just would like more time with her.

On re-direct, Father testified: "My job was always flexible, but the hours I worked between 2014 and 2015 have drastically changed." When asked if he had anything to add to his testimony:

> Just that I'm here, not for money. I'm not here to say she's a bad mother. I'm not here saying the stepfather is a bad person. Like I said earlier, [the Child] is very well loved. I can't help that I was sick. I can't help that. I can't help that I'm bipolar Type 2.

The trial court specifically stated that the Child "is super intelligent, active, and healthy, making good grades" and "is thriving." In granting the motion to dismiss, the court found that "where the child is presently living now and under the current Parent Plan, . . . the child is doing super." Because Father failed to prove any material change, we do not consider whether modification would be in the Child's best interest. Accordingly, we affirm the decision of the trial court that Father failed to meet his burden to prove that a material change in circumstances merited a modification of the parenting plan.

## Attorney's Fees and Costs at Trial and on Appeal

When the trial court entered its final order in the matter, the applicable version of Tennessee Code Annotated section 36-5-103(c) provided as follows:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c). An amended statute went into effect on July 1, 2018:

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the non-prevailing party in any ***criminal or civil contempt action*** or other proceeding to enforce, alter, change,

or modify any decree of alimony, child support, or ***provision of a permanent parenting plan order***, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

Tenn. Code Ann. § 36-5-103(c) (emphasis added).[7] The revised version of the statute specifically allows attorney's fees incurred in contempt proceedings and matters involving permanent parenting plans, whereas the earlier language did not. *See, e.g., Watts v. Watts*, 519 S.W.3d 572 (Tenn. Ct. App. June 8, 2016) (reversing attorney's fee award for criminal contempt action for lack of statutory authority). The old version controls the instant case.

We note that at the trial level, Father not only sought a modification of the parenting plan, but sought to hold Mother in contempt and to stop alimony payments. The contempt and alimony claims were dropped on the first day of trial, but Mother had been required to address them throughout the litigation process in addition to Father's modification challenge. Before the trial court, Father agreed that the awarded attorney's fees, $21,722.36, "are directly related to Father's Petition to Modify and are reasonable." However, despite previously agreeing that the attorney's fees requested were reasonable, Father now asserts that the trial court "inappropriately relied on Tennessee Code Annotated § 36-5-103(c)" and "seemed to treat this case as a custody matter rather than a modification to Father's parenting time."

In our view, the prior version of 36-5-103(c) did not authorize the award of attorney's fees related to petitions for contempt or modification of the permanent parenting plan. Thus, we find that the trial court improperly awarded Mother attorney's fees and costs related to these issues. Accordingly, we must vacate in part the trial court's award and remand for a hearing regarding the attorney's fees that may be assessed involving the alimony issue.

This court also has the discretion to award attorney's fees pursuant to Tennessee Code Annotated section 36-5-103(c). When deciding attorney's fees on appeal, the court considers the following factors: "the party's ability to pay such fees, the requesting party's success on appeal, whether the appeal was taken in good faith, and any other equitable factors relevant in a given case." *Moran v. Willensky*, 399 S.W.3d 651, 666 (Tenn. Ct. App. 2010). Although Father raised matters resolved in a prior order, no substantive evidence was presented, and Father even admitted that Mother was a splendid parent and that the Child is thriving, we, exercising our discretion, do not find an award of attorney's fees on appeal to be appropriate. Mother's request for attorney's fees on appeal is denied.

---

[7] Public Chapter 905 (H.B. 2526). Signed by then Gov. Bill Haslam on May 3, 2018.

## V. CONCLUSION

For the foregoing reasons, we vacate in part the trial court's order of attorney's fees. The trial court's judgment is otherwise affirmed, and the case is remanded for further proceedings consistent with this opinion. Costs of the appeal are assessed one-half to the appellant, Griff Elliott Akins, and one-half to the appellee, Mary Alice Akins.

_____
JOHN W. MCCLARTY, JUDGE